# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>vs.<br><br>MARY LAVONE LINNELL,<br>　　　　Defendant. | Case No. 22-cr-61-CJW<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I.　　INTRODUCTION

On August 3, 2022, the Grand Jury charged Defendant with one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(A). (Doc. 3.)

The matter before the Court is Defendant's Motion to Suppress. (Doc. 19.) The Government timely filed a resistance and brief. (Docs. 23 and 23-1.) The Honorable Charles J. Williams, United States District Court Judge, referred the motion to me for a Report and Recommendation. I held a hearing on Thursday, September 22, 2022. (Doc. 24.)

This motion arises from a November 11, 2021 traffic stop of a vehicle in which Defendant was the front-seat passenger. The issues presented are (1) whether Officer Reinert had probable cause to stop the vehicle due to a traffic violation; and (2) whether Officer Reinert had reasonable suspicion of criminal activity to permit an investigative traffic stop of the vehicle.

At the hearing, the following Government exhibits were admitted:[1]

1. August 31, 2022, Judgment entered against Jonathan Roy Wright by Honorable Chief Judge Leonard T. Strand;

2. Johnathan Roy Wright's Indictment;

3. Officer Reinert dash camera footage; and

4. Officer Reinert body camera footage.

Defendant filed an inventory of items she seeks to suppress, i.e., the methamphetamine, electronic scale, baggie of cocaine, crack pipe, and meth pipe seized on November 11, 2021, and statements Defendant may have made at the time of the stop (this inventory item was amended at the hearing on Defendant's motion). (Doc. 19-2.)

The Government called Officer Nicholas Reinert to testify. Officer Reinert is a police officer with the City of Cedar Rapids ("CRPD"). He has been employed with the CRPD for approximately four years and has been involved in approximately 450 traffic stops. I found him to be a credible witness. For the following reasons, I respectfully recommend that the District Court deny Defendant's Motion to Suppress.

## II. FINDINGS OF FACT

On November 11, 2021 at around 12 a.m., Officer Reinert was on patrol driving past the residence of Jonathan Wright at 923 Oakland Road NE in Cedar Rapids.[2] (Officer Nicholas Reinert Sept. 22, 2022 Hr'g Test.) Officer Reinert was aware that Jonathan Wright was a known methamphetamine distributer because Wright had an extensive narcotics history of dealing and using narcotics. (*Id.*) Officer Reinert had

---

[1] Defendant's objection to Exhibit 4 was overruled. Exhibits 1-3 were admitted without objection.

[2] Hearing testimony is from the Court Reporter's rough draft of the transcript of the September 22, 2022 suppression hearing that was provided as a courtesy to the Court. An official transcript of the hearing had not been entered into the docket at the time this Report and Recommendation was filed.

stopped more than five vehicles leaving Wright's residence, many of which had narcotics in the vehicle. (*Id.*) During these stops, the vehicle occupants often stated that they received the drugs from Wright. (*Id.*) Additionally, in April of 2021, Officer Reinert responded to a heroin overdose at Wright's address. (*Id.*) On January 21, 2022, Wright was indicted on four counts, count one for conspiracy to distribute a controlled substance, methamphetamine or a mixture of methamphetamine, between October 2020 through in or around October 2021. (Doc. 23-3 at 1.) On August 31, 2022, Wright pled guilty to count one of the indictment. (Doc. 23-2 at 1.) Wright was committed to the custody of the Federal Bureau of Prisons to serve a 136-month term in prison. (*Id.* at 2.)

Officer Reinert was aware of Wright's activity related to narcotics on November 11, 2021. (Officer Reinert Hr'g Test.) As Officer Reinert was driving northbound on Oakland Road, he noticed the headlights of a vehicle in the driveway of Wright's residence, which appeared to be leaving the driveway. (*Id.*) Defendant, it was later determined, was the front-seat passenger of this vehicle. (*Id.*) Officer Reinert observed that the vehicle remained in the driveway for at least 15 to 20 seconds idling with its right turn signal on before pulling out. (*Id.*) There were no other vehicles on Oakland Road at this time, so Defendant's vehicle[3] was free to turn southbound in the direction it was signaling. (*Id.*) Officer Reinert became suspicious that the occupants of Defendant's vehicle wanted him to leave before they drove away. (*Id.*) When Defendant's vehicle left the driveway heading southbound on Oakland Road NE, Officer Reinert observed it in his rearview mirror driving through the intersection of H Avenue and Oakland Road NE without stopping at the stop sign. (*Id.*) Officer Reinert was about two city blocks away from the intersection when he viewed this traffic violation in his rearview mirror.

---

[3] "Defendant's vehicle" designates the vehicle in which Defendant was a passenger. This nomenclature is merely to distinguish it from other vehicles mentioned herein because ownership of this vehicle is not at issue.

(*Id.*)  This infraction was not recorded on his dash camera because the dash camera points forward, and Officer Reinert was driving away from Defendant's vehicle.[4]  (*Id.*)  Officer Reinert testified that he did not stop the vehicle when he observed it "run a stop sign" (i.e., travel past a stop sign without coming to a full stop) because he usually only issues traffic violations when the infraction is caught on his dash camera.  (*Id.*)

Officer Reinert turned around to follow the vehicle onto the southbound lanes of Interstate 380.  (*Id.*)  The vehicle was in the right lane of Interstate 380 with an ambulance in front of it in the right lane.  (*Id.*)  Defendant's vehicle then signaled and merged into the center lane.  (*Id.*)  The ambulance also signaled and merged in front of the vehicle in the center lane. (Gov. Ex. 3 at 12:13:42-48.)  Defendant's vehicle failed to slow down and followed the ambulance at a distance of two car lengths for approximately a quarter mile.  (Officer Reinert Hr'g Test.)  Based on the rainy conditions and the speed of the vehicle, Officer Reinert believed that two car lengths is not a safe traveling distance because the front vehicle may stop unexpectedly.  (*Id.*)  Additionally, two car lengths equate to approximately a half-second distance between Defendant's vehicle and the ambulance.[5]  (Doc. 23-1 at 7.)

Also, Officer Reinert testified that he was pacing Defendant's vehicle and determined that that it was speeding, i.e., travelling at 59 miles per hour in a 55 mile per hour zone.[6]  (Officer Reinert Hr'g Test.)  Officer Reinert testified that he pulled

---

[4] Another camera in Officer Reinert's vehicle seemingly points to the rear of the vehicle through the back windshield.  (See Gov. Ex. 3, right camera.)  Although Officer Reinert testified that he does not know what this rear facing camera is intended to record, he has not used it to record traffic violations and he does not believe it is used to record traffic violations.  (Officer Reinert Hr'g Test.)

[5] The Government determined this half-second distance by assuming Defendant's vehicle was traveling at 55 miles per hour, which equates to 80.67 feet per second, with an estimate of 20 feet for the two car lengths.  (Doc. 23-1 at 7, n. 1.)

[6] Officer Reinert stated that he knew Defendant's vehicle was speeding because he used the technique of pacing to determine its speed.  (Officer Reinert Hr'g Test.)  This consists of

4

Defendant's vehicle over for following the ambulance too closely on the interstate, for speeding, for rolling through a stop sign, and for suspicious activity at Wright's house. (*Id.*)

Officer Reinert approached Defendant's vehicle on the passenger-side, where Defendant was sitting in the front passenger seat. He told the occupants he stopped them for following the ambulance too closely on the interstate, about two car lengths, in rainy conditions, and for going about four miles per hour over the speed limit. (Gov. Ex. 4 at 12:16:33-66.) When Officer Reinert asked, "Do you know what I'm talking about?" Defendant appeared to nod. (*Id.*) Officer Reinert testified that this question was not intended to obtain an admission of guilt. (Officer Reinert Hr'g Test.) Officer Alex Rink, a canine officer, appeared on the scene and his dog indicated for the presence of narcotics. (*Id.*) A search of the vehicle was conducted, and 110.16 grams of pure methamphetamine were found at Defendant's feet in a bag of chips. (*Id.*) Drug paraphernalia was also found, including plastic baggies, a crack pipe, a methamphetamine pipe, an electronic scale in Defendant's purse, and a plastic baggie containing .25 grams of salt cocaine in Defendant's jacket. (*Id.*) Officer Reinert testified that several of these items are associated with the packaging and selling of narcotics. (*Id.*)

### III. THE PARTIES' POSITIONS

Defendant argues that there was no probable cause to stop the vehicle in which Defendant was the front-seat passenger on November 11, 2021. Defendant blames the ambulance for the proximity of Defendant's vehicle to the ambulance. (Doc. 19-1 at 2-3.) Defendant argues that the Fourth Amendment is violated when "an objectively good reason for a traffic stop does not exist," although she concedes that a traffic violation, regardless of its severity, is sufficient probable cause to stop a vehicle. (*Id.*) However,

---

maintaining the same speed, neither gaining nor losing space between the vehicles, and using the speedometer to determine the speed of both vehicles. (*Id.*)

since the ambulance merged in front of the vehicle, Defendant argues that the ambulance "failed to keep a proper lookout to the rear," and merged without leaving Defendant's vehicle a safe distance to follow. (*Id.* at 3.) Defendant argues that the ambulance violated the duty to keep a "proper lookout," so Defendant's vehicle did not commit a traffic violation. (*Id.*) Thus, Defendant asserts that Officer Reinert violated her Fourth Amendment right to be free from unlawful seizures by stopping the vehicle. (*Id.*)

Additionally, Defendant asserts that Officer Reinert did not have reasonable suspicion to stop Defendant's vehicle in the absence of a traffic violation. (Doc. 19-1 at 4.) Defendant argues that Officer Reinert did not have reasonable suspicion of criminal activity because he only cited one fact, Defendant's vehicle leaving the driveway of an address known for illegal narcotics activity. (*Id.*) Defendant contends that reasonable suspicion requires more than a single fact. (*Id.*) Simply having Defendant's vehicle leaving the driveway of a house known for narcotics activity is not sufficient to satisfy probable cause according to Defendant. (*Id.*)

In contrast, the Government argues that if an officer has an objectively reasonable basis for determining that a traffic law has been breached, that alone is sufficient for probable cause to stop a vehicle. (Doc. 23-1 at 4.) Since Officer Reinert saw the vehicle fail to come to a complete stop at the stop sign at the intersection of Oakland Road NE and H Avenue, speed at 59 miles per hour in a 55 mile per hour zone on Interstate 380, and follow the ambulance too closely during rainy conditions, there was probable cause to stop the vehicle for traffic violations. (*Id.* at 5-7.) In addition, the Government contends that Officer Reinert also had reasonable suspicion of criminal activity to stop Defendant's vehicle because the vehicle was leaving a known narcotics residence at around midnight, the vehicle idled suspiciously as if waiting for Officer Reinert to leave the vicinity before exiting the driveway, and Officer Reinert had personal experience stopping individuals leaving the same residence who often stated that they received drugs

from Wright. (*Id.* at 8.) The Government asserts that Officer Reinert had reasonable suspicion of criminal activity on these facts taken together, even in the absence of traffic violations and even if each of these circumstances considered alone is not enough for reasonable suspicion. (*Id.*)

## IV. DISCUSSION

### A. *Legal Standards*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)); *Terry v. Ohio*, 392 U.S. 1, 9 (1968)) (internal quotations omitted). "A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (citing *United States v. Hollins*, 685 F.3d 703, 705-06 (8th Cir. 2012)). Reasonable suspicion is based on "both the content of the information possessed by police and its degree of reliability." *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). Reasonable suspicion is based on the totality of the circumstances and requires a "particularized and objective basis" for suspecting legal wrongdoing before a stop can be justified. *United States v. Patrick*, 776 F.3d 951, 954 (8th Cir. 2015) (quoting *Cortez*, 449 U.S. at 417). A hunch does not constitute reasonable suspicion to justify a stop. *Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018) (citing *Terry*, 392 U.S. at 27). Rather, officers must be able to articulate "some minimal, objective justification for an investigatory stop." *United States v. Walker*, 555 F.3d 716, 719 (8th Cir. 2009) (quoting *United States v. Fuse*, 391 F.3d 924,

929 (8th Cir. 2004)). However, "[e]ven an officer's incomplete initial observations may give reasonable suspicion for a traffic stop." *Givens*, 763 F.3d at 989 (quoting *Hollins*, 685 F.3d at 706).

"A law enforcement officer whose observations lead him or her reasonably to suspect that a particular person has been or is about to be engaged in criminal activity may stop that person to investigate the circumstances that provoke suspicion." *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005) (citing *Arvizu*, 534 U.S. at 273; *Johnson v. Crooks*, 326 F.3d 995, 998 (8th Cir. 2003)). Even innocuous actions may give rise to reasonable suspicion under the totality of the circumstances. *United States v. Condelee*, 915 F.2d 1206, 1209 (8th Cir. 1990) (opining that "there could be 'circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot'") (quoting *Reid v. Georgia*, 448 U.S. 438, 441 (1980)).

*United States v. Harvey* succinctly articulated the concept of reasonable suspicion in the context of a traffic stop:

> The concept of "reasonable suspicion" is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S. Ct. 2317, 2329 (1983). In large part, common sense dictates the analysis of reasonable suspicion.
>> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behaviors; jurors as fact-finders are permitted to do the same and so are law enforcement officers.
>
> *United States v. Cortez,* 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981). Inherent in the concept of reasonable suspicion is the fact that officers may be mistaken in their beliefs. The keystone in such cases hinges on reasonableness. Under the law, "a reasonable but mistaken belief may justify an investigative stop." *United States v. Bailey,* 417 F.3d 873, 877 (8th Cir. 2005). *See also United States v. Garcia–Acuna,* 175 F.3d 1143, 1147 (9th Cir. 1999) ("A mistaken premise can furnish grounds for

8

> a *Terry* stop, if the officers do not know that it is mistaken and are reasonable in acting upon it.").

No. 14-00029-11-CR-W-GAF, 2015 WL 1197918, at *4 (W.D. Mo. Mar. 16, 2015).

In the context of traffic violations, a police officer may stop a vehicle only when the officer has "'at least a reasonable, articulable suspicion that criminal activity has occurred or is occurring,' and 'a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.'" *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021) (quoting *United States v. Martin*, 411 F.3d 998, 1000 (8th Cir. 2005)). Generally, a traffic stop "is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). A minor traffic violation is sufficient to establish probable cause for an officer to conduct a traffic stop even if the stop is pretext for another investigation. *United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007) (quoting *United States v. Coney*, 456 F.3d 850, 855-56 (8th Cir. 2006)). An officer's actual motivation for making the stop beyond simply issuing a traffic violation is irrelevant provided that the officer has an objectively good reason for making the stop. *Id*.

Once a vehicle has been stopped, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 410 (2005).

**B. Analysis**

### 1. *Officer Reinert had probable cause to stop Defendant's vehicle on November 11, 2021, because he had an objectively reasonable basis for believing that Defendant's vehicle violated a traffic law.*

Defendant argues that Defendant's vehicle did not commit any traffic violations. (Doc. 19-1 at 3.) Defendant acknowledges that following too closely is a violation of

9

Iowa Code Section 321.307. (*Id.* at 2.) However, Defendant argues that the ambulance committed a traffic violation by cutting off Defendant's vehicle. (*Id.* at 3.) Specifically, Defendant cites to cases that the establish a driver's duty to maintain a "proper lookout." *See Vasconez v. Mills*, 651 N.W.2d 48, 52 (Iowa 2002) (when a bicyclist was hit by a passing driver, the court held that the driver failed to keep a proper lookout by not seeing the bicyclist, but the bicyclist had a duty of lookout to the rear which required "only sufficient observation to establish an awareness of the presence of others *at a time when a maneuver is contemplated which may endanger a following vehicle*") (quoting *McCoy v. Miller*, 136 N.W. 2d 332, 336 (Iowa 1965)).

In contrast, the Government contends that Defendant's vehicle did not come to a complete stop at a stop sign, exceeded the posted speed limit of 55 miles per hour, and followed too closely to the ambulance in rainy highway conditions. (Doc. 23-1 at 5-6.) According to the Government, three Iowa statutes are implicated by this traffic stop, including Iowa Code Sections 321.322, 321.285, and 321.307. (*Id.*) Under Iowa Code Section 321.307, "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Iowa Code Section 321.322 provides in pertinent part the following:

> 1. The driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at the first opportunity at either the clearly marked stop line or before entering the crosswalk or before entering the intersection or at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. . . .

Iowa Code Section 321.285 provides the following:

> 1. Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the

10

> highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit the person to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law.
>
> . . .
>
> 3. Unless otherwise provided in this section or by other speed restrictions, the speed limit for all vehicular traffic shall be fifty-five miles per hour.

The Government cites cases showing that an officer acted reasonably by stopping a vehicle for violating traffic laws, including failing to stop at a stop sign, speeding, and following too closely. *See United States v. Wright*, 512 F.3d 466, 471-72 (8th Cir. 2008) (when the defendant's vehicle was stopped for failing to stop at a stop sign, the court held that the officers' testimony regarding the traffic violation was sufficient to establish probable cause and credible even though the traffic violation was not caught on camera); *United States v. Maurstad*, 35 F.4th 1139, 1143-44 (8th Cir. 2022) (when the defendant's vehicle was stopped for not having license plates and for speeding, the court held that the officer had reasonable suspicion based on the speeding violation alone even though the officer was mistaken about the license plates); *United States v. Andrews*, 454 F.3d 919, 922 (8th Cir. 2006) (an officer generally has probable cause to believe that a vehicle is following too close in an unreasonable and imprudent manner when there is less than two seconds between the vehicles and "[a]n even stronger inference of risk exists when the weather is inclement").

It is well established in this circuit that a violation of a traffic law or the officer's reasonable belief that a violation of a traffic law has occurred is sufficient probable cause to stop a vehicle, whether or not the officer had a separate motivation to stop the vehicle besides a traffic violation. *Cox*, 992 F.3d at 709 (a minor traffic violation is sufficient probable cause to stop a driver and the question is not whether a traffic violation occurred but whether the officer had an objectively reasonable suspicion that a traffic violation

11

occurred); *Whren*, 517 U.S. at 806 ("[t]he temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective").

In *Cox*, the defendant's SUV was stopped for following too closely when the SUV accelerated to approach a pickup truck in the right lane, the pickup braked to take the next exit, and the SUV had to apply its own brakes. 992 F.3d at 708. The officer stopped the defendant's SUV but did not intend to issue a ticket. *Id*. After obtaining consent to a search of the SUV, the officer discovered cocaine. *Id*. at 709. On appeal, the Eighth Circuit considered whether the officer lacked probable cause to stop the SUV for following too closely because the driver of the pickup truck applied its brakes and the defendant was unable to change lanes. *Id*. at 709-10. *Cox* found that even though the defendant could not change lanes, he should not have been surprised when the pickup truck's driver applied its brakes before exiting since there were road signs indicating an upcoming exit. *Id*.

I find that Officer Reinert had probable cause to stop Defendant's vehicle on November 11, 2021 based on the three traffic violations even without considering the other circumstances involving the possible distribution of controlled substances. Officer Reinert had probable cause to stop Defendant for violating Iowa Code Section 321.307 (i.e., for following more closely than is reasonably prudent), even though the ambulance merged in front of Defendant's vehicle. When Officer Reinert followed Defendant's vehicle onto southbound Interstate 380, Defendant's vehicle was travelling in the right lane following an ambulance. When Defendant's vehicle signaled and merged into the center lane, the ambulance also signaled and merged in front of Defendant's vehicle in the center lane. Defendant's vehicle failed to slow down and followed the ambulance at a distance of two car lengths for approximately a quarter mile in rainy conditions. Similar

12

to *Cox*, Defendant should not have been surprised by the ambulance merging in front of Defendant's vehicle because the ambulance clearly indicated its intention to merge by signaling. Defendant's vehicle had the opportunity to brake or to take other action to avoid following too closely for the conditions.

Additionally, the dash camera footage corroborates Officer Reinert's belief that Defendant's vehicle was following too closely. The video shows Defendant's vehicle was traveling approximately two car lengths behind the ambulance and there was rainy weather. A rough conversion of car lengths into seconds between vehicles indicates that two car lengths is approximately a half-second gap distance. As seen in *Andrews*, any distance less than two seconds between vehicles is generally not a reasonable or prudent traveling distance, and even less prudent in inclement weather. 454 F.3d at 922. Based on the foregoing, Officer Reinert had probable cause to stop Defendant's vehicle based on following too closely to the ambulance.

Further, Officer Reinert had probable cause to stop Defendant's vehicle for violating Iowa Code Section 321.322, for failing to stop at a stop sign. Officer Reinert observed Defendant's vehicle in his rearview mirror head southbound on Oakland Road NE and drive through the intersection of H Avenue and Oakland Road NE without stopping at a stop sign. Officer Reinert was about two city blocks away from the intersection but was unable to record the traffic violation on his dash camera because the dash camera points forward, and Officer Reinert was driving in the opposite direction. Officer Reinert testified that he was watching Defendant's vehicle in his rearview mirror specifically to determine whether or not it was going to stop at the intersection, and he watched Defendant's vehicle travel through the turn without stopping. An officer's testimony that a traffic violation occurred may be credible even without a video recording of the violation and is sufficient to establish probable cause. *Wright*, 512 F.3d at 471-72. Credibility determinations based on a witnesses' testimony are for the trial court to

13

decide. *Id.* (quoting *United States v. Health*, 58 F.3d 1271, 1275 (8th Cir. 1995)). Additionally, the question is whether the officer had an objectively reasonable suspicion that a traffic violation occurred not whether the traffic violation actually occurred. *Cox*, 992 F.3d at 709. Here, I find that Officer Reinert's testimony was credible and that he had objectively reasonable suspicion that Defendant's vehicle failed to stop at the Oakland Road and H Avenue intersection stop sign.

Additionally, Officer Reinert had probable cause to stop Defendant's vehicle for violating Iowa Code Section 321.285, for driving 59 miles per hour in a 55 mile per hour zone. Officer Reinert testified that he was pacing Defendant's vehicle by following the vehicle at an equal distance and using his speedometer to determine Defendant's speed was 59 miles per hour in a 55 mile per hour zone. A speeding violation alone is sufficient probable cause to stop a vehicle. *Maurstad*, 35 F.4th at 1143-44. Based on Officer Reinert's testimony and his method of determining the speed of Defendant's vehicle by pacing, I find Officer Reinert had probable cause to stop Defendant's vehicle for speeding. Based on these three traffic violations, Officer Reinert had probable cause to stop Defendant's vehicle.

### 2. *Officer Reinert had reasonable suspicion that Defendant was likely involved in criminal activity on November 11, 2021.*

Defendant argues that Officer Reinert did not have reasonable suspicion of Defendant participating in criminal activity to justify a traffic stop. (Doc. 19-1 at 4-5.) Defendant cites Officer Reinert's awareness that Wright's residence was associated with illegal narcotics activity as his only basis for reasonable suspicion and argues that this fact alone is insufficient to establish reasonable suspicion. (*Id.* at 4.) Defendant relies on two analogous cases that required numerous facts to establish reasonable suspicion of drug activity. *See United States v. Coleman*, 603 F.3d 496 (8th Cir. 2010); *United States v. Bustos-Torres*, 396 F.3d 935 (8th Cir. 2005). *Coleman* found that the officers had

14

reasonable suspicion supporting an investigatory stop for drug-related activity when (1) the officers saw the car illegally stopped and blocking traffic in a known drug-trafficking area, (2) the car had Illinois plates, (3) Illinois is the primary source for cocaine in the area in question, (4) out-of-state plates indicate the vehicle might be a rental making detection and identification more difficult, (5) an individual known for drug trafficking entered the defendant's vehicle, and (6) an occupant of the defendant's vehicle removed something from the trunk and re-entered the vehicle. 603 F.3d at 500. Based on the totality of the circumstances, the court found the officers had reasonable suspicion of drug activity. *Id.*

*Bustos-Torres* found reasonable suspicion to conduct an investigatory stop when (1) the location was known for drug activity, (2) the officer witnessed an apparent drug deal (a parked car and an exchange of money for a baggie with someone from a nearby establishment), (3) a repetition of the same sequences of events occurred within a few minutes except the officer could not see the exchange. 396 F.3d at 939-40, 942. Because the officer witnessed a probable drug deal, the repetition of the same circumstances with the same person from the nearby establishment created a reasonable suspicion that this person was dealing drugs from the establishment to occupants of vehicles in the parking lot even though the circumstances required an attenuated inference by the officer. *Id.* at 943.

In the present case, Defendant cites *Coleman* and *Bustos-Torres* to show that the officer's reliance on a single fact, Defendant leaving a residence known for drug activity, is insufficient to show reasonable suspicion of criminal activity, and numerous facts taken together are required to show reasonable suspicion. (Doc. 19-1 at 5.) Neither case stands for the proposition that a single fact is insufficient to show reasonable suspicion. Rather, both cases merely cite numerous facts describing a particular incident, which when taken

15

together were sufficient to establish the reasonable suspicion necessary to conduct an investigatory stop.

The Government contends that Officer Reinert depended upon more than just a single fact to establish reasonable suspicion of criminal activity. (Doc. 23-1 at 8.) These facts included that it was (1) midnight, (2) Defendant's vehicle was leaving the residence of a known narcotics dealer, (3) Officer Reinert had personally stopped vehicles leaving this residence and recovered methamphetamine from these vehicles, (4) the occupants of these stopped vehicles stated that they received the methamphetamine from Wright, (5) Defendant's vehicle remained in the driveway for at least 15 to 20 seconds idling with its right turn signal on before pulling out, (6) Defendant's vehicle was free to turn in the direction it was signaling during this period. The Government argues that the facts in the present case are more analogous to the facts in *United States v. Collins*, 883 F.3d 1029 (8th Cir. 2018). *Collins* found reasonable suspicion to conduct an investigatory stop when (1) the residence and garage were known for drug-related activity, (2) in the month prior to the stop "[t]he officers had observed a high volume of traffic at the garage, primarily during the late evening and early morning hours," (3) the defendant arrived, entered the garage, and left at approximately 4:30 a.m., (4) the resident drug dealer was likely at home because there was a motorcycle in the driveway. *Id.* at 1031, 1033.

I find that Officer Reinert had reasonable and articulable suspicion that narcotics activity was afoot sufficient to conduct an investigatory stop of Defendant's vehicle on November 11, 2021. Some factors that an officer may consider when determining whether to investigate include "time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *Collins*, 883 F.3d at 1032 (quoting *United States v. Quinn*, 812 F.3d 694, 697-98 (8th Cir. 2016)). In the case at bar, even if the fact that Defendant's vehicle was leaving a residence known for narcotics activity is by itself insufficient to support reasonable suspicion, there were

16

numerous facts indicating criminal activity: (1) it was midnight, (2) Defendant's vehicle was leaving the residence of a known narcotics dealer, (3) Officer Reinert had personally stopped vehicles leaving this residence and recovered methamphetamine from these vehicles, (4) the occupants of these stopped vehicles stated that they received the methamphetamine from Wright, (5) Defendant's vehicle remained in the driveway for at least 15 to 20 seconds idling with its right turn signal on before pulling out, (6) Defendant's vehicle was free to turn in the direction it was signaling during this period. The hesitation by the driver of Defendant's vehicle, the time of night, and the facts linking Wright's residence to narcotics activity support the reasonable suspicion that occupants of Defendant's vehicle were involved in criminal activity. Based on the totality of the circumstances, I find that Officer Reinert had reasonable suspicion of narcotics-related activity sufficient to conduct an investigatory stop of Defendant's vehicle.

## V. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **DENY** Defendant's Motion to Suppress. **(Doc. 19.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 19th day of October, 2022.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa