# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MARY LAVONE LINNELL, <br><br> Defendant. | No. 22-CR-61 CJW-MAR <br><br><br> **ORDER** |

_____

This matter is before the Court on defendant's Objections (Doc. 26) to the Report and Recommendation (Doc. 25) of the Honorable Mark A. Roberts, United States Magistrate Judge. On September 8, 2022, defendant filed a Motion to Suppress. (Doc. 19). The government timely filed a resistance. (Doc. 23). On September 22, 2022, Judge Roberts held a hearing on the motion. (Doc. 24). On October 19, 2022, Judge Roberts issued his Report and Recommendation, which recommends that the Court deny the Motion to Suppress. (Doc. 25). On October 30, 2022, defendant timely filed her Objections. (Doc. 26). Defendant had not, however, ordered the transcript from the suppression hearing, so the Court had to await its completion to perform a de novo review of the record. On November 9, 2022, the hearing transcript was filed. (Doc 27).

For the following reasons, the Court **overrules** defendant's Objections, **adopts** Judge Roberts' Report and Recommendation, and **denies** the Motion to Suppress.

## I.     STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The

district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) ("[A district judge must] undertake[ ] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report and recommendation when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of the Report and Recommendation de novo.

## II.  FACTUAL BACKGROUND[1]

On November 11, 2021, at around 12 a.m., Officer Reinert was on patrol driving past the residence of Jonathan Wright at 923 Oakland Road NE in Cedar Rapids, Iowa. (Doc. 27, at 9-10). Officer Reinert was aware that Jonathan Wright was a known methamphetamine distributer because Wright had an extensive narcotics history of dealing and using narcotics. (*Id.*, at 9-10). Officer Reinert had stopped more than five vehicles leaving Wright's residence, many of which had narcotics in the vehicle. (*Id.*, at 10). During these stops, the vehicle occupants often stated that they received the drugs from Wright. (*Id.*, at 10-11). Additionally, in April of 2021, Officer Reinert responded

---

[1] After reviewing the Hearing Transcript (Doc. 27), the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in the Report and Recommendation. The Court thus adopts Judge Roberts' summary of the facts here. When relevant, the Court relies on and discusses additional facts in conjunction with its legal analysis. The Court also found Judge Roberts' footnotes to be accurate, but most were immaterial to the Court's analysis and so has omitted them here.

2

to a heroin overdose at Wright's address. (*Id.*, at 12). On January 21, 2022, Wright was indicted on four counts, count one for conspiracy to distribute a controlled substance, methamphetamine or a mixture of methamphetamine, between in or around October 2020 through in or around October 2021. (Doc. 23-3 at 1). On August 31, 2022, Wright pled guilty to count one of the indictment. (Doc. 23-2 at 1). Wright was committed to the custody of the Federal Bureau of Prisons to serve a 136-month term in prison. (*Id.*, at 2).

Officer Reinert was aware of Wright's activity related to narcotics on November 11, 2021. (*Id.*, at 10). As Officer Reinert was driving northbound on Oakland Road, he noticed the headlights of a vehicle in the driveway of Wright's residence, which appeared to be leaving the driveway. (*Id.*, at 12-13). Defendant, it was later determined, was the front-seat passenger of this vehicle. (*Id.*, at 21). Officer Reinert observed that the vehicle remained in the driveway for at least 15 to 20 seconds idling with its right turn signal on before pulling out. (*Id.*, at 12-13). There were no other vehicles on Oakland Road at this time, so defendant's vehicle was free to turn southbound in the direction it was signaling. (*Id.*, at 13). Officer Reinert became suspicious that the occupants of defendant's vehicle wanted him to leave before they drove away. (*Id.*).

When defendant's vehicle left the driveway heading southbound on Oakland Road NE, Officer Reinert observed it in his rearview mirror driving through the intersection of H Avenue and Oakland Road NE without stopping at the stop sign. (*Id.*, at 13-14). Officer Reinert was about two city blocks away from the intersection when he viewed this traffic violation in his rearview mirror. (*Id.*, at 28). This infraction was not recorded on his dash camera because the dash camera points forward, and Officer Reinert was driving away from Defendant's vehicle. (*Id.*, at 14-15). Officer Reinert testified that he did not stop the vehicle when he observed it "run a stop sign" (i.e., travel past a stop

3

sign without coming to a full stop) because he usually only issues traffic violations when the infraction is caught on his dash camera. (*Id.*).

Officer Reinert turned around to follow the vehicle onto the southbound lanes of Interstate 380. (*Id.*, at 15). The vehicle was in the right lane of Interstate 380 with an ambulance in front of it in the right lane. (*Id.*, at 16). Defendant's vehicle then signaled and merged into the center lane. (*Id.*). The ambulance also signaled and merged in front of the vehicle in the center lane. (*Id.*, at 18; Gov. Ex. 3 at 12:13:42-48). Defendant's vehicle failed to slow down and followed the ambulance at a distance of two car lengths for approximately a quarter mile. (*Id.*, at 18-19). Based on the rainy conditions and the speed of the vehicle, Officer Reinert believed that two car lengths was not a safe traveling distance because the front vehicle may stop unexpectedly. (*Id.*, at 19-20). Additionally, two car lengths equate to approximately a half-second distance between Defendant's vehicle and the ambulance.[2] (Doc. 23-1 at 7.)

Also, Officer Reinert testified that he was pacing defendant's vehicle and determined that it was speeding, i.e., travelling at 59 miles per hour in a 55 mile per hour zone. (*Id.*, at 20). Officer Reinert stated that he knew defendant's vehicle was speeding because he used the technique of pacing to determine its speed. (*Id.*). This consists of maintaining the same speed, neither gaining nor losing space between the vehicles, and using the speedometer to determine the speed of both vehicles. (*Id.*).

Officer Reinert testified that he pulled defendant's vehicle over for following the ambulance too closely on the interstate, for speeding, for rolling through a stop sign, and for suspicious activity at Wright's house. (*Id.*, at 20-21). Officer Reinert approached defendant's vehicle on the passenger-side, where defendant was sitting in the front

---

[2] The Government determined this half-second distance by assuming defendant's vehicle was traveling at 55 miles per hour, which equates to 80.67 feet per second, with an estimate of 20 feet for the two car lengths. (Doc. 23-1 at 7, n.1).

4

passenger seat. (*Id.*, at 21). He told the occupants he stopped them for following the ambulance too closely on the interstate, about two car lengths, in rainy conditions, and for going about four miles per hour over the speed limit. (*Id.*, at 20-22; Gov. Ex. 4 at 12:16:33-66). When Officer Reinert asked, "Do you know what I'm talking about?[,]" defendant appeared to nod. (Gov. Ex. 4 at 12:16:33-66; Doc. 27, at 35). Officer Reinert testified that this question was not intended to obtain an admission of guilt. (Doc. 27, at 35). Officer Alex Rink, a canine officer, appeared on the scene, and his dog indicated for the presence of narcotics. (*Id.*, at 23-24). A search of the vehicle was conducted, and 110.16 grams of pure methamphetamine were found at defendant's feet in a bag of chips. (*Id.*, at 24). Drug paraphernalia was also found, including plastic baggies, a crack pipe, a methamphetamine pipe, an electronic scale in defendant's purse, and a plastic baggie containing .25 grams of salt cocaine in defendant's jacket. (*Id.*, at 24-25). Officer Reinert testified that several of these items are associated with the packaging and selling of narcotics. (*Id.*, at 11-12).

### III. ANALYSIS

In the Motion to Suppress, defendant argues that Officer Reinert did not have reasonable cause to stop defendant's vehicle for traffic violations. (Doc. 19-1). Defendant argues that the vehicle did not follow the ambulance too closely. (*Id.*, at 2-3). Defendant also argues that reasonable cause to stop defendant's vehicle also did not exist based on suspicion of drug activity. (*Id.*, at 4-5).

In his Report and Recommendation, Judge Roberts recommended that the Court deny defendant's motion. (Doc. 25). Judge Roberts found evidence of three traffic violations, any one of which gave rise to probable cause to stop defendant's vehicle: 1) following the ambulance too closely under the conditions; 2) not coming to a complete stop at a stop sign; and 3) exceeding the posted speed limit. (*Id.*, at 12-14). Judge Roberts also found that Officer Reinert had reasonable, articulable suspicion to stop the

5

vehicle, independent of the traffic violations, on the reasonable belief that the vehicle was involved in illegal narcotics activity. (*Id.*, at 16-17).

Defendant objects to four conclusions in Judge Roberts' Report and Recommendation: (1) that defendant's vehicle was following the ambulance too closely; (2) that defendant's vehicle failed to come to a complete stop; (3) that defendant's vehicle exceeded the speed limit; and (4) that there was sufficient evidence to create a reasonable suspicion that defendant's vehicle was involved in narcotics activity. (Doc. 26). The Court addresses each objection in turn.

### A. *Following Too Closely Traffic Violation*

Defendant argues that Judge Roberts erred in finding that defendant's vehicle followed an ambulance too closely. (*Id.*, at 2). Defendant argues that Judge Roberts erred in finding that defendant's car followed at approximately two car lengths, asserting that instead the distance was 2-5 car lengths. (*Id.*). Defendant also argues that the video demonstrates it was not raining when Officer Reinert stopped defendant's vehicle. (*Id.*).

The Court overrules defendant's objections. The Court has reviewed the dash camera from Officer Reinert's squad car. (Exhibit 3). It shows an ambulance on the interstate pulling over into the center lane in front of defendant's vehicle. Although the ambulance perhaps should not have pulled in front of defendant's vehicle at that distance, defendant's vehicle then proceeded to follow the ambulance at a short distance. The Court finds the distance depicted in the video is consistent with Officer Reinert's testimony that it was approximately two car lengths. Officer Reinert also audibly states, while following defendant's vehicle, that the distance was two car lengths, a contemporaneous statement of observation that corroborates his later testimony of the length. (Exhibit 4). Officer Reinert notes on the audio of his body camera that defendant's vehicle has "backed off a little bit" at one point. This is consistent with his testimony at the hearing that the distance was between 2 to 5 car lengths. (*Id.*, at 39).

6

That defendant's vehicle at some point maintained a more proper and safer distance does not negate that for periods of time defendant's vehicle was traveling too closely.

Further, the Court finds it clear that it was raining. Both the dash camera and the officer's body camera show the windshield wipers operating on the officer's car. The dash camera also shows the wet pavement on the interstate. Officer Reinert also notes on his body camera video that it is raining. When he approaches defendant's vehicle, defendant is reluctant to roll down his window "because she didn't want to get wet." Officer Reinert responded that it was not really raining out, but just "spitting a little," yet went on to explain that he pulled the car over because it was following the ambulance too closely under rainy conditions.

Defendant does not object to Judge Roberts' legal conclusion that a traffic violation, no matter how minor, provides probable cause to stop a vehicle regardless of the officer's subjective motivation for stopping the car. (Doc. 25, at 11, citing *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021)). Here, the Court finds the evidence shows probable cause to believe defendant's vehicle was following the ambulance at an unsafe distance in violation of Iowa Code Section 321.307, and thus Officer Reinert's stopping of defendant's vehicle was lawful.

Accordingly, defendant's objection on this ground is **overruled**.

### B. *Stopping at a Stop Sign*

The single traffic violation of following the ambulance too closely is sufficient to find the stop lawful here. Nevertheless, the Court will also address the other two traffic violations that the government asserts provided probable cause for stopping defendant's vehicle. Defendant argues that Judge Roberts erred in crediting the officer's testimony that defendant's vehicle also failed to stop at a stop sign before getting onto the interstate. (Doc. 26, at 2). Defendant argues it is simply not credible to believe that the officer was able to observe the alleged failure of the vehicle to come to a complete stop at the stop

sign by looking through his rear window at a distance of two blocks. (*Id.*). Defendant also relies on the fact that Officer Reinert did not initiate a traffic stop based on that observation or ticket the driver for the violation as proof that it did not occur. (*Id.*).

The Court overrules defendant's objection. Judge Roberts, who observed Officer Reinert testify at the hearing, found him credible. (Doc. 26, at 2). Other than a general challenge about the ability of the officer to observe the traffic violation, defendant points to nothing else to call into question the officer's credibility. Further, Officer Reinert explained that he did not cite the driver for the violation because unlike the speeding and following another vehicle too closely, this violation was not caught on camera. That is a reasonable and understandable explanation and does not cause the Court to call into question the officer's veracity.

These facts gave rise to probable cause to believe defendant violated Iowa Code Section 321.322. Again, defendant does not contest that a traffic violation gives rise to a lawful stop.

Accordingly, defendant's objection on this ground is **overruled**.

### C. *Speeding*

Defendant objects to Judge Roberts' finding that there was probable cause to believe defendant's vehicle was exceeding the speed limit by driving 59 miles-per-hour ("mph") in a 55 mph zone. (Doc. 26, at 3). Defendant argues that no device was used to clock defendant's speed and that it is unclear "when exactly Officer Reinert 'paced'" defendant's vehicle. (*Id.*). Defendant also points out that Officer Reinert testified that the speed limit does change to 60 mph "on the stretch of highway where the stop occurred." (*Id.*).

The Court again overrules defendant's objection. The dash camera from Officer Reinert's car shows the officer maintaining a steady distance behind defendant's vehicle on the interstate at the time he is heard on his body camera stating that he has paced the

8

Case 1:22-cr-00061-CJW-MAR   Document 28   Filed 11/09/22   Page 8 of 12

vehicle at 59 mph. (Exhibits 3 & 4). Thus, combined, the exhibits do provide an exact time when the officer paced defendant's vehicle. And although it was not recorded with a radar gun or other device, the Court again has no reason to question the veracity of the officer. Further, after Officer Reinert stopped defendant's vehicle and told the driver she was driving 4 miles over the speed limit, the driver did not protest or deny speeding. Combined, the totality of the evidence supports the conclusion that Officer Reinert had probable cause to believe that defendant's vehicle was exceeding the posted speed limit sufficient to justify a stop.

As for the change in the speed limit, at the hearing, Officer Reinert testified that the speed limit on some parts of Interstate 380 is 60 mph. (Doc 27., at 31-32). The speed limit where he observed defendant's vehicle traveling at 59 mph, however, was not in a 60 mph zone; it was traveling 59 mph in a 55 mph zone, and even one mph over the posted limit is speeding under Iowa law. (*Id.*, at 31).

Accordingly, defendant's objection on this ground is **overruled**.

### D. *Reasonable Suspicion Justifying the Stop*

Defendant objects to Judge Roberts' finding that Officer Reinert had a reasonable suspicion that the people in defendant's vehicle were engaged in illegal narcotics activity. (Doc. 26, at 3-4). Defendant argues that Judge Roberts' R&R listed six facts supporting a reasonable suspicion, but they really only constitute two facts: 1) the length of time the car stayed in the driveway of Wright's house before turning and, 2) defendant's vehicle was at a house associated with illegal narcotics activity. (*Id.*). As to the first fact, defendant asserts there could be many innocent explanations for such a delay, including the driver being on a cellular phone or talking with the passenger. (*Id.*, at 3). As to the location being associated with narcotics activity, defendant cites *United States v. Bustos-Torres*, 396 F.3d 935 (8th Cir. 2005), where the court found reasonable suspicion, but found it was "attenuated." (*Id.*, at 4). Defendant contrasts the facts in that case with the

9

facts here and argues the conclusion of reasonable suspicion is even more attenuated here. (*Id.*).

The Court finds Judge Roberts did not err. Judge Roberts found the following facts supported a finding of reasonable suspicion of drug activity: "(1) it was midnight, (2) Defendant's vehicle was leaving the residence of a known narcotics dealer, (3) Officer Reinert had personally stopped vehicles leaving this residence and recovered methamphetamine from these vehicles, (4) the occupants of these stopped vehicles stated that they received the methamphetamine from Wright, (5) Defendant's vehicle remained in the driveway for at least 15 to 20 seconds idling with its right turn signal on before pulling out, (6) Defendant's vehicle was free to turn in the direction it was signaling during this period." (Doc. 25). The Court finds the evidence fully supports finding all these facts. These are facts that support a finding of reasonable suspicion. *See United States v. Collins*, 883 F.3d 1029, 1032 (8th Cir. 2018) (listing factors that an officer may consider when determining whether to investigate as including "time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence.") (quoting *United States v. Quinn*, 812 F.3d 694, 697-98 (8th Cir. 2016)) (further citation omitted).

Defendant's argument that there could have been an innocent explanation for the delay in leaving Wright's driveway is unpersuasive. Federal courts, including the United States Supreme Court, have long held that an investigative stop is permitted even if "the conduct justifying the stop was ambiguous and susceptible of an innocent explanation." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *see also United States v. Arvizu*, 534 U.S. 266, 277 (2002) (instructing that reasonable suspicion may exist even if "each of the[ ] factors alone is susceptible of innocent explanation."); *United States v. Sokolow*, 490 U.S. 1, 10 (1989) ("the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of

noncriminal acts."); *United States v. Sanchez*, 955 F.3d 669, 676 (8th Cir. 2020) (finding that although there could be innocent explanations for various individual factors, they can still support a finding of reasonable suspicion); *United States v. Reddick*, 910 F.3d 358, 361 (8th Cir. 2018) ("Law enforcement officers are entitled to evaluate the totality of the circumstances in deciding whether reasonable suspicion is present, and they may possess reasonable suspicion even when innocent explanations can be put forward for each individual circumstance."); *United States v. Cotton*, 782 F.3d 392, 395–96 (8th Cir. 2015) (holding that conduct that is susceptible to an innocent explanation can form the basis of reasonable suspicion); *United States v. Donnelly*, 475 F.3d 946, 953 (8th Cir. 2007) ("When considered together, however, otherwise innocent facts can give rise to a reasonable suspicion, especially when viewed through the perspective of an experienced law enforcement officer."); *United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1998) ("A reasonable suspicion may be justified even if there are innocent explanations for a defendant's behavior when the circumstances are considered in the totality."); *United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994) ("Although there is a possible innocent explanation for each of the factors, as a totality they created a reasonable suspicion justifying further investigation reasonable in scope."); *United States v. Bloomfield*, 40 F.3d 910, 918 (8th Cir. 1994) (observing that "'[a] series of acts that appear innocent, when viewed separately, may warrant further investigation when viewed together.'") (quoting *United States v. Weaver*, 966 F.2d 391, 394 (8th Cir. 1992)). Thus, even if there were, theoretically, an innocent explanation for the delay in defendant's car leaving Wright's driveway, Officer Reinert was justified in stopping the car to investigate whether the occupants were involved in illegal narcotics activity, given the other facts present.

Last, the Court is not persuaded that the facts here are more attenuated than those present in *Bustos-Torres* such that the Court should find reasonable suspicion lacking.

11

Although missing here is activity that an officer observed as consistent with a drug deal taking place, that is not required. Defendant's vehicle was present at a drug dealer's house late at night without any other obvious purpose, the occupants of other vehicles leaving Wright's residence had bought drugs from him, and the occupants of this vehicle acted suspiciously by not leaving the driveway when it appeared they spotted the officer's vehicle and waited for him to leave the area. Reasonable suspicion need not be probable cause. It requires only articulable facts which, taken as a whole, would cause a reasonable officer with knowledge of criminal activity to believe that crime *might* be afoot sufficient to justify a brief stop of a person to further the investigation. In short, Officer Reinert had reasonable suspicion and was justified in stopping defendant's car.

Accordingly, defendant's objection on this ground is **overruled**.

### IV. CONCLUSION

For the reasons set forth above, defendant's Objections (Doc. 26) are **overruled**, Judge Roberts' Report and Recommendation (Doc. 25) is **adopted**, and defendant's Motion to Suppress (Doc. 19) is **denied**.

**IT IS SO ORDERED** this 9th day of November, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa